104 P.3d 686 (2004)
STATE of Washington, Respondent,
v.
Ryan Alan JACKMAN, Appellant.
No. 30393-1-II.
Court of Appeals of Washington, Division Two.
December 21, 2004.
Publication Ordered January 19, 2005.
*687 Thomas E. Weaver, Attorney at Law, Port Orchard, WA, for Appellant Cross-Respondent.
Neil Robert Wachter, Kitsap County Prosecutor's Office, Port Orchard, WA, for Respondent/Cross-Appellant.
BRIDGEWATER, P.J.
Ryan Alan Jackman appeals his 12 convictions for (1) sexual exploitation of a minor; (2) communication with a minor for immoral purposes; (3) patronizing a juvenile prostitute; (4) intercepting, recording, or divulging private communication; and (5) furnishing liquor to a minor. In 11 of the 12 "to-convict" jury instructions, the court instructed that an element, which had to be proved beyond a reasonable doubt, was that the particular victim "was a minor." Clerk's Papers (CP) at 112. Within those instructions, in the same line as the minority requirement, the court listed the victims' birth dates. We hold that by so instructing, the trial court impermissibly relieved the State of its burden of proving an essential element of the crime beyond a reasonable doubt, and the court violated article 4, section 16 of the Washington Constitution. Accordingly, we reverse and remand on all counts except for that of recording private communication, which we affirm.
In 2002, Ryan Jackman was the night manager at the All Star Lanes bowling alley in Silverdale, Washington. Jackman owned a video camera, which he brought to work on several occasions. He told at least two of his coworkers that he planned to make pornographic videos to sell on the Internet.
One evening during the summer of 2002, B.L.E. and his friend L.C.E. went to the All Star Lanes. Jackman approached the two young men and started a conversation with them as they exited the bowling alley around 11 P.M. Neither of the young men had met Jackman before this contact. Jackman asked the two men if they were interested in making money. He then told the two young men that he wanted each of them to masturbate on camera for $150 each. Jackman asked both of the men if they were 18 years old and they both replied "yeah." Report of Proceedings (RP) (Feb. 27, 2003) at 321. He then told them that he needed photo identification before he could make his videotape available for sale. Jackman told the two men to meet him at his nearby apartment complex around 1:00 A.M. if they were interested in his offer.
At 1:00 A.M., B.L.E. and L.C.E. arrived at Jackman's apartment complex and Jackman brought them to his unit. He provided the boys with 40-ounce bottles of beer. The three also watched a pornographic video. Jackman again asked the two young men *688 their ages and they again responded that they were 18. Eventually, Jackman showed them the cash and confirmed with B.L.E. and L.C.E. that they still wanted to accept his offer. When they said yes, Jackman positioned each boy at opposite ends of his couch in his living room and filmed the two boys while they masturbated.
Jackman paid each of the boys $150. Jackman also asked B.L.E. to perform oral sex on him in exchange for $40, but B.L.E. declined the offer. At various times during the contact, Jackman asked B.L.E. for his identification and the boy told him that his ID card was lost but that he was getting a replacement card and would bring it to Jackman later. Jackman also asked L.C.E. for identification and L.C.E. told him that he would bring him his identification later.
Jackman also met M.T.F. and K.W.J. while working at All Star Lanes. M.T.F. bowled frequently at the alley. After meeting M.T.F., Jackman occasionally gave him free passes to bowl. M.T.F. introduced Jackman to his friend K.W.J. and Jackman also provided free admission into events for K.W.J.
Jackman invited M.T.F. to his apartment in 2002. In July of that year, M.T.F. made his first of three visits to Jackman's apartment. M.T.F. and K.W.J. visited the apartment together and played video games with Jackman.
In mid-July 2002, Jackman and M.T.F. had a conversation at the bowling alley where Jackman told M.T.F. he was involved in making a pornographic video to sell on the Internet. He offered M.T.F. $150 to masturbate in front of the camera. M.T.F. declined Jackman's offer. Jackman made no attempt to find out M.T.F.'s age at that time.
During a second visit to Jackman's apartment in July 2002, M.T.F., K.W.J., and Jackman played drinking games. Neither of the boys brought alcohol with them to Jackman's apartment. The boys became drunk after a couple hours of drinking and K.W.J. passed out. Jackman asked M.T.F. if he was 18 years old and M.T.F. told him he was not 18.
M.T.F. felt drunk and Jackman again asked if he was 18 years old and he responded, "[n]o." RP (Feb. 28, 2003) at 429. Jackman then asked M.T.F. if he would change his mind about being videotaped once he turned 18. M.T.F. and Jackman played with the video camera for a while and taped K.W.J. Eventually, Jackman placed the video camera on a shelf in the living room, telling M.T.F. he turned the camera off. The camera pointed at the couch where M.T.F. sat and it was not "off." RP (Feb. 28, 2003) at 433.
Jackman sat next to M.T.F. on the couch and asked M.T.F. to do "sexual things" with him; M.T.F. declined Jackman's offer. RP (Feb. 28, 2003) at 434. The two sat on the couch for a while and then Jackman began masturbating. M.T.F. also began to masturbate for a short time.
On the third visit to Jackman's apartment in July, K.W.J. and M.T.F. visited the apartment, along with several other young people, and the group played drinking games. Jackman videotaped a portion of the evening without telling K.W.J. K.W.J. discovered the video the following morning when he saw himself in an intoxicated state.
In October 2002, law enforcement contacted Jackman after someone complained to the Kitsap County Sheriff's Office that someone had paid two minors $150 to perform sexually explicit conduct on video. Jackman told the sheriff's office that he asked the ages of the two minors but he did not verify their ages. He also stated that he gave them a "Model Release Form" that indicated they were adults but the minors never returned the forms to him. CP at 4. Jackman further told the officers that he videotaped over the incident because he believed the boys were minors since they did not produce proof of age.
On February 25, 2003, in its fourth amended information, the State charged Jackman with three counts of sexual exploitation of a minor; one count of patronizing a juvenile prostitute; one count of intercepting, recording, or divulging private communication; three counts of communication with a minor for immoral purposes; and four counts of furnishing liquor to a minor.
At trial, the State called B.L.E. B.L.E. testified that his date of birth was April 21, *689 1985. The State also admitted a photocopy of B.L.E.'s identification card showing his date of birth. B.L.E. explained that he lied to Jackman about his age because he wanted to get the money Jackman offered. The State also called L.C.E. He stated that his date of birth was October 21, 1985. L.C.E's mother also testified that her son was born on October 21, 1985. L.C.E. testified that he told Jackman he was 18 in order to receive the money for making the video.
K.W.J. testified that his birth date was January 6, 1985. He stated that he met Jackman through his friend, M.T.F., at the bowling alley. The State also called M.T.F. who testified that he was born on August 1, 1984. Additionally, the State entered a copy of M.T.F's driver's license.
In all 11 "to-convict" instructions, the court used the initials of the complaining witness and that person's date of birth. During jury deliberations, the jury sent out a question asking for proof of age for L.C.E. After consulting with counsel, the court responded that the jury had received all the evidence and that it should base its deliberations on that evidence. Later that same day, the jury sent a more specific question asking the court to clarify a discrepancy in the jury instructions for L.C.E.'s birth date. Jury instruction 18 listed L.C.E.'s birth date as January 6, 1985. Jury instruction 25 listed his birth date as October 21, 1985. The court took a recess and the State confirmed L.C.E.'s correct birth date. The court then instructed the jury regarding the information. The jury found Jackman guilty on all counts.

I. Jury Instructions
Jackman argues that the trial court commented on the evidence by instructing the jury on the victims' birth dates. This alleged error occurred in 11 of the 12 counts; only the count concerning intercepting, recording, or divulging private communication did not have either the element of minority or the victims' birth dates in the "to-convict" instruction. Jackman further contends the trial court's error is subject to structural error analysis.
Jury instructions meet the requirement of a fair trial when, read as a whole, they properly advise the jury of the applicable law, are not misleading, and permit the defendant to argue his theory of the case. State v. Tili, 139 Wash.2d 107, 126, 985 P.2d 365 (1999). Article IV, section 16 of the Washington State Constitution prohibits judges from conveying to the jury their personal attitudes toward the merits of a case.[1]State v. Foster, 91 Wash.2d 466, 481, 589 P.2d 789 (1979). An appellate court determines whether a comment on the evidence is improper by reviewing the facts and circumstances in each case. State v. Painter, 27 Wash.App. 708, 714, 620 P.2d 1001 (1980), review denied, 95 Wash.2d 1008 (1981).
Jackman asserts that it was error for the "to-convict" instructions to include the victims' birth dates because age is an element of the offenses.[2] The birth dates are expressed in both elements one and two of all 11 to-convict instructions for those 11 counts. We agree with Jackman.
An instructional error requires reversal only when it relieves the State of its burden of proving every essential element of the crime. State v. DeRyke, 149 Wash.2d 906, 912, 73 P.3d 1000 (2003). Jackman cites State v. Becker, 132 Wash.2d 54, 935 P.2d 1321 (1997), as support. In Becker, whether the defendants sold drugs in a school zone area was disputed. Becker, 132 Wash.2d at 64, 935 P.2d 1321. Police arrested the defendants in an area near the "Youth Education Program," a general equivalency degree program. *690 Becker, 132 Wash.2d at 57-58, 935 P.2d 1321. The program was located in a commercial office building and not a school campus. Becker, 132 Wash.2d at 58, 935 P.2d 1321. At trial, the defendants presented considerable evidence that the program did not have attributes of a traditional school. Becker, 132 Wash.2d at 58, 935 P.2d 1321. The court gave the jury a special verdict form that specifically designated the program as a school, and the jury found the defendants guilty. Becker, 132 Wash.2d at 64, 935 P.2d 1321. On appeal, our Supreme Court found that the court's instruction violated article IV, section 16 of the Washington Constitution because the instruction "relieved the State of its burden to prove all elements of the sentence enhancement statute." Becker, 132 Wash.2d at 65, 935 P.2d 1321.
Another case that illuminates application of this constitutional provision is State v. Primrose, 32 Wash.App. 1, 645 P.2d 714 (1982). In Primrose, the trial court instructed the jury, in a bail-jumping case, that as a matter of law the defendant had not introduced evidence of a lawful excuse, (absence of excuse being an element of the crime). Primrose, 32 Wash.App. at 2, 645 P.2d 714. We held that "[c]onsequently, it is inappropriate for a trial court to resolve the issue of whether the State has established this element as a matter of law." Primrose, 32 Wash.App. at 3, 645 P.2d 714. The court impermissibly relieved the State of its burden of proving an essential element of the crime beyond a reasonable doubt and it was tantamount to a directed verdict. Primrose, 32 Wash.App. at 4, 645 P.2d 714.
The State contends that, since the minors testified to their ages and Jackman did not contest that testimony, a harmless error analysis would be appropriate. We examine this argument under Neder v. United States, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). In Neder, the Supreme Court adopted a harmless error analysis when the court fails to instruct the jury on all elements of an offense. Neder, 527 U.S. at 9, 119 S.Ct. 1827. The Court found that such a failure "does not necessarily render a criminal trial fundamentally unfair." Neder, 527 U.S. at 9, 119 S.Ct. 1827. But, the harmless error doctrine does not apply to structural errors; rather, structural errors are subject to automatic reversal. Neder, 527 U.S. at 8, 119 S.Ct. 1827 (listing examples: total denial of counsel, biased trial judge, racial discrimination in selection of grand jury, denial of self-representation at trial, denial of public trial, and defective reasonable-doubt instruction). Failure to instruct the jury does not result in automatic reversal because such error is not a "structural" error, i.e., a "`defect affecting the framework within which the trial proceeds.'" Neder, 527 U.S. at 8, 119 S.Ct. 1827 (quoting Ariz. v. Fulminante, 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). That type of defect "`infects(s) the entire trial process.'" Neder, 527 U.S. at 8, 119 S.Ct. 1827 (quoting Brecht v. Abrahamson, 507 U.S. 619, 630, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)). We hold that there is a significant and fundamental difference between failing to instruct on an element and conclusively instructing on an element the State must prove.
By instructing on the minority of the victims, the trial court violated article IV, section 16 of the Washington Constitution. The comment was tantamount to directing a verdict on that element. This structural error infects the entire trial process. The court's intrusion into the trial process was magnified when the jury discovered a discrepancy in the instructions as to one of the victim's correct date of birth.[3] None of the attorneys knew from memory the correct birth date, the court took a recess, and the prosecutor then reported that "[L.C.E.'s] proper date of birth is October 21, 1985." 4 RP (Mar. 4, 2003) at 645. The court then instructed the jury as to the birth date. Instructing the jury as to an element or a fact is a structural error not subject to a harmless error analysis. When an issue is taken away from the jury, it is fundamental and harmful. Our analysis is consistent with Primrose, Becker, *691 and Neder. All convictions, except for the conviction for intercepting, recording, or divulging private communications that did not contain the instruction as to birth date nor a minority element, must be reversed.

II. Double Jeopardy
Jackman contends that his convictions for communication with a minor for immoral purposes and exploitation of a minor violate double jeopardy principles. Although we reverse these convictions, we address the issue because it may arise on retrial.
The United States Constitution double jeopardy clause guarantees that no "person [shall] be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST., amend. V. The Washington State Constitution similarly states that "[n]o person shall be ... twice put in jeopardy for the same offense" in article I, section 9. But, it is within the legislature's right to define criminal conduct and to specify punishment for that criminal conduct. State v. Calle, 125 Wash.2d 769, 776, 888 P.2d 155 (1995).
Our initial inquiry into this issue is whether the statutory language expressly allows for convictions under both statutes for the same transaction or act. Calle, 125 Wash.2d at 776, 888 P.2d 155. Where the statutes are silent, this court turns to principles of statutory construction. Calle, 125 Wash.2d at 777, 888 P.2d 155. Under the principles of statutory construction, the first rule of construction is the "same evidence" test. State v. Baldwin, 150 Wash.2d 448, 454, 78 P.3d 1005 (2003). This test states that two statutory offenses are the "same" for the purpose of double jeopardy if the offenses "are identical both in fact and in law." Calle, 125 Wash.2d at 777, 888 P.2d 155. Offenses are not constitutionally the same if one offense includes an element not included in the other and where proof of one would not necessarily prove the other. Baldwin, 150 Wash.2d at 454, 78 P.3d 1005.
In this case, the statutes for sexual exploitation of a minor and communication with a minor for immoral purposes do not expressly provide punishment under both statutes for the same act or transaction. A person is guilty of sexual exploitation of a minor if the person:
(a) Compels a minor by threat or force to engage in sexually explicit conduct, knowing that such conduct will be photographed or part of a live performance;
(b) Aids, invites, employs, authorizes, or causes a minor to engage in sexually explicit conduct, knowing that such conduct will be photographed or part of a live performance.
RCW 9.68A.040(1)(a)(b). A person commits communication with a minor for immoral purposes when the person: communicates with a minor for immoral purposes or with a person the person believes to be a minor for immoral purposes. RCW 9.68A.090(1).
The crime of sexual exploitation of a minor requires that a person compel the minor by threat of force or aids, invites, employs, authorizes or causes the minor to engage in sexually explicit conduct when the person knows the conduct will be photographed. RCW 9.68A.040(1)(a)(b). Communication with a minor for immoral purposes requires only that a person communicate with a minor for immoral purposes. RCW 9.68A.090(1). These offenses do not satisfy the "same evidence" test because each offense contains an element not contained in the other offense. Baldwin, 150 Wash.2d at 455, 78 P.3d 1005.
But Baldwin holds that even where two statutes do not meet the "same evidence" test, they are to be considered the same if the legislature has clearly indicated its intent that the same conduct or transaction be punished under each statute. Calle, 125 Wash.2d at 778-80, 888 P.2d 155.
The legislature enacted former RCW 9.68A.020, now RCW 9.68A.040 in 1980. Laws of 1980, ch. 53, § 2. Its purpose was to protect children from child pornography. In 1984, the legislature repealed these laws, and enacted a new statute to "prevent[] sexual exploitation and abuse of children." Laws of 1984, ch. 262, § 1. This new chapter included section three, the crime of sexual exploitation of a minor, and section eight, the crime of communication with a minor for immoral purposes. Laws of 1984, ch. 262 §§ 3, 8.
*692 Although the crimes of sexual exploitation of a minor and communication with a minor for immoral purposes do not explicitly allow punishment under both statutes for the same act or transaction, the legislative purpose articulates a high priority for protecting children and, thus, it implies punishment for violation of each section of the chapter.

III. Statement of Additional Grounds for Review (SAG)
In his SAG, Jackman raises for the first time a perceived conflict of interest. Jackman asserts a conflict of interest exists because as a police cadet on Bainbridge Island in Kitsap County, he had direct contact with the prosecutors in his case, the lead investigator, arresting officers, and other detectives. A review of the record does not support Jackman's assertion.
First, Jackman knew at the time of trial of his personal involvement with various members of the law enforcement community in Kitsap County. But, the record is devoid of any attempts by Jackman to remove these members from the case.
Second, Jackman alleges that the Kitsap County Prosecutor's Office more aggressively prosecuted his case but his SAG does not point out any specific instances to the record that support his allegation. He cites no record of conversations in his SAG. And the examples he provides do not support a claimed conflict of interest.[4] Thus, we deny Jackman's request to allow retrial in another county.
Reversed and remanded for new trial on all counts except for intercepting, recording or divulging a private conversation, which we affirm.
We concur: ARMSTRONG and VAN DEREN, JJ.
NOTES
[1] Article 4, section 16 of the Washington Constitution reads: "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law."
[2] For illustrative purposes we randomly include one to-convict instruction because they all use the same format:

It is not a defense to the charge of Sexual Exploitation of A Minor that at the time of the offense the defendant did not know the age of B.L.E., D.O.B. 04/21/1985, L.C.E., D.O.B. 10/21/1985, or M.T.F., D.O.B. 08/01/1984, or that the defendant believed B.L.E., D.O.B. 04/21/1985, L.C.E., D.O.B. 10/21/1985, or M.T.F., D.O.B. 08/01/1984 to be older.
CP at 111 (Jury instruction 15).
[3] The jury's question was: "Jury instructions for Instruction No. 18 and 25, there is a discrepancy with L.C.E. date of birth." CP at 132.
[4] He states that the two prosecutors taught a class he took while attending the Reserve Police Officer Academy in Kitsap County. But he fails to show why this prejudiced him at trial. Nor can he show prejudice on the part of the lead investigator who also taught at the Academy. Finally, that Jackman either worked with or was taught by the arresting officers and other detectives does not support a conflict of interest.