[No. 76574-0.  En Banc.]

Argued October 27, 2005.  Decided April 13, 2006.

THE STATE OF WASHINGTON, *Petitioner*, v. RYAN ALAN JACKMAN, *Respondent*.

738

Russell D. Hauge, Prosecuting Attorney, and Randall A. Sutton, Deputy, for petitioner.

Thomas E. Weaver, Jr., for respondent.

¶1  FAIRHURST, J. — The State seeks reversal of a Court of Appeals decision holding that a reference to minor victims' birth dates on 11 "to convict" jury instructions was prejudicial per se because the State was relieved of the burden of proving the element of the victims' ages. The defendant,

Ryan Alan Jackman, cross-petitions for reversal of the court's denial of his double jeopardy claim. In accordance with our reasoning in *State v. Levy*, 156 Wn.2d 709, 132 P.3d 1076 (2006), we hold that the references to the victims' birth dates were judicial comments on the evidence and we cannot affirmatively conclude that no prejudice resulted. We, therefore, affirm the Court of Appeals and remand for new trial. We do not decide whether the convictions for communication with a minor for immoral purposes and sexual exploitation of a minor violate double jeopardy.

## I. FACTS

¶2 Jackman, a night manager at a bowling alley in Silverdale, Washington, approached B.L.E. and L.C.E. at the bowling alley and asked if they wanted to make some money by masturbating while he taped them with his video camera. Jackman, who was 20 years old at the time, told the boys he intended to sell the video and offered to pay them $150 each. He asked if they were 18 years old and told them to meet him at his apartment at 1:00 AM if they were interested in making the video. B.L.E. was 17 years old at that time and L.C.E. was 16.

¶3 B.L.E. and L.C.E. came to Jackman's apartment at 1:00 AM, where Jackman gave them beer and they watched a pornographic video. Jackman asked them again if they were 18 and if they wanted to accept his offer, but he did not ask for their identification.[1] The two boys agreed to his offer, and Jackman filmed them while they masturbated. Afterward, Jackman paid each boy $150, and he asked B.L.E. to perform oral sex in exchange for $40, but B.L.E. declined.

¶4 Two other boys, M.T.F. and K.W.J., also went to Jackman's apartment on three occasions. At the time, M.T.F. and K.W.J. were both 17 years old. On the first visit,

---

[1] The record indicates that Jackman asked for identification from both boys at several points throughout the events in question. B.L.E. told Jackman his identification was lost and that he was in the process of getting it replaced. L.C.E. told Jackman he did not have his identification with him.

Jackman and the two boys only played video games. After that visit, Jackman spoke with M.T.F. at the bowling alley and explained about his plans to make and sell pornographic videos, offering M.T.F. $150 to masturbate for the camera. Jackman did not ask M.T.F.'s age, and M.T.F. declined the offer.

¶5 During the second visit, M.T.F., K.W.J., and Jackman played drinking games, the boys drank alcohol provided by Jackman, and K.W.J. "passed out." While K.W.J. was unconscious, Jackman asked M.T.F. several times if he was 18 and M.T.F. said no. Later that evening, Jackman left the video camera on while he and M.T.F. masturbated on the couch. M.T.F. and Jackman then taped K.W.J. while he was passed out. K.W.J. later said he was shocked to discover that he had been videotaped and did not know who had made the tape.

## II. PROCEDURAL HISTORY

¶6 The State charged Jackman with three counts of sexual exploitation of a minor, three counts of communication with a minor for immoral purposes, four counts of furnishing liquor to a minor, one count of patronizing a juvenile prostitute, and one count of intercepting, recording, or divulging private communication.[2] At trial, the four boys testified as to their birth dates and the State presented corroborating evidence of the birth dates for B.L.E., L.C.E., and M.T.F.

¶7 The State proposed 12 "to convict" jury instructions, 11 of which are at issue in this case.[3] The instructions designated the victims by their initials and included the

[2] Jackman was not charged with sexual exploitation of a minor or communication with a minor for immoral purposes with regard to K.W.J. The charge of patronizing a juvenile prostitute applied to Jackman's request for oral sex from M.T.F. The charge of intercepting, recording, or divulging private communication applied only to M.T.F.

[3] The "to convict" jury instructions at issue were identical. Instruction 16 is quoted below as an example:

To convict the defendant of the crime of Sexual Exploitation of a Minor as charged in Count I, each of the following elements of the crime must be proved beyond a reasonable doubt—

victims' birth dates. Jackman did not object to the instructions at trial, and the court gave the instructions to the jury exactly as proposed by the State. During deliberations, the jury requested proof of age for L.C.E. to resolve a discrepancy between two of the jury instructions.[4] Jackman was convicted on all counts.

¶8 Jackman appealed his conviction to the Court of Appeals, Division Two, which reversed and remanded for a new trial on all but one count. The court held that the trial court violated article IV, section 16 of the Washington State Constitution by instructing the jury on the minority of the victims.[5] The court denied a claim Jackman raised for the first time on appeal that the convictions for communication with a minor for immoral purposes and exploitation of a minor violate the double jeopardy provisions of the constitutions of the United States and State of Washington. The

---

(1) That on or about June 1, 2002, through October 9, 2002, the defendant aided, invited, employed, authorized, or caused B.L.E., DOB 04/21/1985 to engage in sexually explicit conduct;

(2) That B.L.E., DOB 04/21/1985, was a minor;

(3) That he knew the conduct would be photographed or part of a live performance; and

(4) That the acts occurred in the State of Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

Clerk's Papers at 112.

[4] Jury instruction 18 erroneously listed L.C.E.'s birth date as January 6, 1985. Jury instruction 25 correctly listed his birth date as October 21, 1985. The jury made two inquiries regarding L.C.E.'s birth date. First, it asked for clarification of L.C.E.'s birth date. When the court did not provide it, the jury made a second request, pointing out a discrepancy between the two instructions. The court provided the correct birth date.

[5] The Court of Appeals affirmed the conviction for intercepting, recording, or divulging a private conversation. *State v. Jackman*, 125 Wn. App. 552, 564, 104 P.3d 686 (2004). The jury instruction for that charge was the only one of the "to convict" instructions that did not reference the victim's birth date. *Id.* at 558.

State petitioned us for review of the Court of Appeals reversal based on the defective jury instructions. Jackman cross-petitioned for review of the denial of his double jeopardy claim. We granted review. *State v. Jackman*, 155 Wn.2d 1007, 122 P.3d 728 (2005).

## III. ISSUES

A.  Is a reference in a jury instruction to a victim's birth date a judicial comment when an element of the crime is the victim's minority? If so, what is the effect?

B.  Did Jackman's convictions for sexual exploitation of a minor and communicating with a minor for immoral purposes violate principles of double jeopardy?

## IV. ANALYSIS

A.  Is a reference in a jury instruction to a victim's birth date a judicial comment when an element of the crime is the victim's minority? If so, what is the effect?

¶9 The State argues that inclusion of the victims' birth dates in 11 of the 12 "to convict" jury instructions did not constitute judicial comment on the evidence, but even if it was judicial comment, it is subject to harmless error analysis in accord with *Neder v. United States*, 527 U.S. 1, 19, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999). Jackman contends that the references to the birth dates were judicial comments, that a judicial comment on the evidence violates article IV, section 16 of the Washington Constitution,[6] and that such errors are automatically prejudicial. Alternatively, he argues that judicial comments are "structural" errors and, therefore, cannot be subject to harmless error analysis. Jackman argues that *Neder* does not control the facts of this

---

[6] Article IV, section 16 states "[j]udges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law."

case because *Neder* dealt with the omission of an element from a jury instruction, whereas this case involves an affirmative comment on the evidence in the jury instruction. He further contends that a judicial comment is an error of constitutional magnitude that may be raised for the first time on appeal.

¶10 We considered the question of whether a judicial comment in a jury instruction is an error of constitutional magnitude in *Levy* and concluded that such claims are properly raised for the first time on appeal. *Levy*, 156 Wn.2d at 719-20. We also concluded that the test we apply to determine whether a judicial comment on the evidence in a jury instruction was prejudicial is that it is presumed to be prejudicial and the burden is on the State to show that the defendant was not prejudiced, unless the record affirmatively shows that no prejudice could have resulted. *Id.* at 725. In light of *Levy*, we analyze whether the references in this case constituted judicial comment on the evidence and, if so, whether the record affirmatively shows that no prejudice could have resulted.

1. *Were the references to the victims' birth dates judicial comments on the evidence?*

¶11 The State argues that the jury instructions were not judicial comment because the victims' ages were never in dispute. It reasons that any error resulting from stating their ages was, therefore, harmless. Jackman argues that the instructions were judicial comment because a critical element in the crimes at issue was *whether the victims were minors*. He claims the court informed the jury that the evidence regarding the victims' birth dates was unassailable and the jury never had to render a decision on those facts.

¶12 As noted in *Levy*, we review a challenged jury instruction de novo, within the context of the jury instructions as a whole. *Levy*, 156 Wn.2d at 721; *State v. Pirtle*, 127 Wn.2d 628, 656, 904 P.2d 245 (1995). A judge is prohibited by article IV, section 16 from "conveying to the jury his or

her personal attitudes toward the merits of the case" or instructing a jury that "matters of fact have been established as a matter of law." *State v. Becker*, 132 Wn.2d 54, 64, 935 P.2d 1321 (1997). A judge need not expressly convey his or her personal feelings on an element of the offense; it is sufficient if they are merely implied. *State v. Jacobsen*, 78 Wn.2d 491, 495, 477 P.2d 1 (1970); *State v. Lampshire*, 74 Wn.2d 888, 892, 447 P.2d 727 (1968).

¶13 In contrast to the references in *Levy*, the instructions in this case do not differ meaningfully from the instruction in *Becker*. In *Becker*, the fundamental basis for the charge was the fact that drugs were being sold *near a school*. *Becker*, 132 Wn.2d at 58. If the State could not prove that the youth program was a school, it had no case. *Id.* at 63. We held that the explicit reference to the program as a school removed that fact from the jury's consideration. *Id.* at 65. In this case, the fundamental basis for the offenses was the fact that the victims *were minors*. Absent that fact, Jackman's actions were not illegal. By stating the victims' birth dates in the instructions, the court conveyed the impression that those dates had been proved to be true. Absent the instructions, the jury would have had to consider whether it believed the evidence presented at trial with respect to the victims' birth dates.[7]

¶14 We conclude that the jury instructions in this case were judicial comments on the evidence because they allowed the jury to infer that the victims' birth dates had been proved by the State.

### 2. *Did prejudice result in this case?*

¶15 The State argues that there was no prejudice here because the ages of the victims were never in dispute. It claims the only issue was whether Jackman "made a bona fide attempt to ascertain" the boys' true ages. Br. of Resp't

---

[7] The credibility of the victims was an issue at trial because B.L.E. and L.C.E. testified that they had lied to Jackman about their ages at the time of the offenses. Thus, the jury could have chosen not to believe their testimony as to their correct birth dates at the time of the events.

at 16. Jackman argues that the error was prejudicial because "it is not apparent that the comment could not have influenced the jury." Br. of Appellant at 19.

■ ¶16 Under the test outlined in *Levy*, the record must affirmatively show that no prejudice could have resulted. *Levy*, 156 Wn.2d at 725. In *Becker*, we ruled that when the trial court referred to a youth program as a school, it took a fundamental factual determination away from the jury. *Becker*, 132 Wn.2d at 65.

¶17 In this case, the fact of the boys' minority was also a threshold issue without which there was no crime. All four boys testified at trial about their correct birth dates. The State presented corroborating evidence for three of them. One of the jury instructions for L.C.E. was incorrect, and the jury had to request clarification. Furthermore, the fact that the boys were minors was a critical element in the charges against Jackman. It is true that the record does not indicate that Jackman challenged the *fact* of their minority, nor does it reflect that he admitted or stipulated to their ages; he asserted only that he had done everything he could to ascertain their ages.[8] Nevertheless, it is still conceivable that the jury could have determined that the boys were *not* minors at the time of the events, if the court had not specified the birth dates in the jury instructions.

¶18 We conclude that because the jury instructions state the victims' birth dates and removed those facts from the jury's consideration, the record does not affirmatively show that no prejudice could have resulted. We therefore affirm the Court of Appeals and remand for retrial with proper jury instructions.

---

[8] A defense to the charge of communication with a minor for immoral purposes is that at the time of the offense the defendant "made a reasonable bona fide attempt to ascertain the true age of the minor by requiring production of a driver's license, marriage license, birth certificate, or other governmental or educational identification card or paper and did not rely solely on the oral allegations or apparent age of the minor." RCW 9.68A.110(3).

## B. Double jeopardy

¶19 Jackman argues that the convictions for sexual exploitation of a minor and communication with a minor for immoral purposes violate the double jeopardy provisions of the constitutions of the United States and State of Washington. He claims that the same facts and law apply to both offenses and the legislature did not expressly provide for multiple punishments. The State counters that the two offenses require proof of different facts and the legislative history demonstrates that the legislature intended to impose multiple punishments.

¶20 Claims of double jeopardy, which are questions of law, are reviewed de novo. *State v. Freeman*, 153 Wn.2d 765, 770, 108 P.3d 753 (2005). A double jeopardy claim may be raised for the first time on appeal. RAP 2.5(a). The United States Constitution provides that a person may not be "subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST., amend. V. Similarly, the Washington State Constitution provides that a person may not be "twice put in jeopardy for the same offense." WASH. CONST. art. I, § 9.

¶21 Washington courts look first to the statutory language to determine if it expressly permits multiple punishments for the applicable statutes. *State v. Calle*, 125 Wn.2d 769, 777, 888 P.2d 155 (1995). The State concedes that the two statutes do not expressly provide for punishment for the same act or transaction.

¶22 If the statutes do not expressly allow multiple punishments, the court turns to statutory construction. *Id.* at 778. Under the rules of statutory construction, we first apply the same evidence rule. *Id.* However, even if the two statutes pass the "same evidence" test, multiple convictions may not stand if the legislature has "otherwise clearly indicated its intent that the same conduct or transaction *will not be punished* under both statutes." *State v. Baldwin*, 150 Wn.2d 448, 455-56, 78 P.3d 1005 (2003) (emphasis added).

## 1. *The same evidence rule*

¶23 Under the same evidence rule, if each offense contains elements not contained in the other offense, the offenses are different and multiple convictions can stand.[9] *Id.* at 454. The test requires the court to determine " 'whether each provision requires proof of a fact which the other does not.' " *Id.* at 455 (quoting *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932)).

¶24 Jackman argues that a double jeopardy violation results if he is convicted of *inviting* sexually explicit conduct that will be photographed and *communicating* with the minor about engaging in sexually explicit conduct that will be photographed. Although he does not fully explain this statement, he appears to be arguing that the words "invite" and "communicate" convey the same meaning and refer to the same action.

¶25 The State responds that RCW 9.68A.040(1)(a), (b), and .090 do not meet the same evidence test. It argues that RCW 9.68A.040(1)(a) and (b) require that a person *take action* to compel a minor to engage in sexually explicit conduct, while RCW 9.68A.090 merely requires that a person *communicate* with the minor for an immoral purpose. While the State acknowledges that the phrase "immoral purposes" includes sexual conduct, it nevertheless maintains that Jackman engaged in qualitatively different actions at different times. Essentially, the State reasons that the act of communicating with minors for immoral purposes relates only to the conversations that took place at the bowling alley, and the act of filming minors while they engaged in prohibited sexual conduct relates only to the activities that occurred at Jackman's apartment.

¶26 RCW 9.68A.040(1)(a) and (b) require the State to prove one of two things. The State must prove that the defendant "[c]ompel[led] a minor by threat or force to engage

---

[9] The first prong of the test described in *Calle* derives from a United States Supreme Court case analyzing double jeopardy principles under the Sixth Amendment. *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932).

in sexually explicit conduct, knowing that such conduct will be photographed or part of a live performance." RCW 9.68A.040(1)(a). Alternatively, the State must prove that the defendant "[a]id[ed], invite[d], employ[ed], authorize[d], or cause[d] a minor to engage in sexually explicit conduct, knowing that such conduct will be photographed or part of a live performance." RCW 9.68A.040(1)(b). RCW 9.68A.040 is stated in the disjunctive, and we note that in this case the jury was instructed to apply only RCW 9.68A.040(1)(b).

¶27 RCW 9.68A.090 requires the State to prove that the defendant communicated with a minor for "immoral purposes." We have expressly held that the phrase "immoral purposes" includes, but is not limited to, "participation by minors in sexual acts for a fee, or appearance on film or in live performance while engaged in sexually explicit conduct." *State v. McNallie*, 120 Wn.2d 925, 933, 846 P.2d 1358 (1993). The statute also imposes a more general prohibition on communication with minors for the "predatory purpose of promoting their exposure to and involvement in sexual misconduct." *Id.* Thus, it incorporates within its scope a relatively broad range of sexual conduct involving a minor. "Communication" under RCW 9.68A.090 may involve either a course of conduct or spoken words. *State v. Falco,* 59 Wn. App. 354, 358, 796 P.2d 796 (1990). Further, a defendant communicates with a minor under RCW 9.68A.090 if he or she *invites* or *induces* the minor to engage in prohibited conduct. *McNallie*, 120 Wn.2d at 934.

¶28 When we have applied this prong of the test in other cases, we have looked not only at whether the offenses are related in fact, but also whether they are related in law. *Calle*, 125 Wn.2d at 778. In *Calle*, we concluded that the offense of incest was *not identical in law* to the offense of rape because incest requires proof of relationship, while rape requires proof of force. *Id.* In *Baldwin*, we concluded that the offenses of forgery and identity theft were *not related in fact* because the offense of forgery requires " 'the making, completion, or alteration of a written instru-

ment,' " but the offense of identity theft requires only " 'use of a means of identification with the *intent* to commit an unlawful act.' " 150 Wn.2d at 455 (quoting *State v. Baldwin*, 111 Wn. App. 631, 641, 45 P.3d 1093 (2002)).

¶29 However, we recently concluded that double jeopardy was violated because the evidence for first degree attempted murder and first degree assault was the same where they were both "based on the same shot directed at the same victim." *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 820, 100 P.3d 291 (2004). We have also cited with approval two United States Supreme Court rulings that criticized multiple convictions based on "spurious distinctions between the charges" in holding that a prosecutor could not divide a defendant's conduct into segments in order to obtain multiple convictions. *State v. Adel*, 136 Wn.2d 629, 635, 965 P.2d 1072 (1998) (citing *Brown v. Ohio*, 432 U.S. 161, 169, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977); *In re Snow*, 120 U.S. 274, 282, 7 S. Ct. 556, 30 L. Ed. 658 (1887)). The Court of Appeals held that because the State had to prove reckless driving in order to prove reckless endangerment, the two convictions violated double jeopardy because it was impossible to commit one without also committing the other. *State v. Potter*, 31 Wn. App. 883, 888, 645 P.2d 60 (1982).

¶30 In addition, if a statute constitutes a lesser included offense of another statute, convictions for both offenses would violate double jeopardy. *State v. Brett*, 126 Wn.2d 136, 181, 892 P.2d 29 (1995). The Court of Appeals concluded that communication with a minor for an immoral purpose was not a lesser included offense of sexual exploitation of a minor because communication is not "invariably part of both offenses." *State v. Bohannon*, 62 Wn. App. 462, 472, 814 P.2d 694 (1991). Nevertheless, it might be possible under the facts of a particular case for a person convicted of committing the offense of sexual exploitation of a minor to also be convicted of the offense of communication with a minor for an immoral purpose. If a person merely invited a minor to engage in sexually explicit conduct while being filmed, that conduct might also satisfy the communication statute, even though

the sexual exploitation statute clearly encompasses actions that exceed mere invitation to engage in the prohibited conduct. Under the *Calle* test, therefore, if a court concludes that the facts the State must prove to convict the defendant under the two statutes are the same, the convictions violate double jeopardy and the analysis ends.

¶31 On retrial, if Jackman is found guilty of both offenses, the trial court will have to consider the same evidence rule and whether, under the facts proved, one conviction is a lesser included offense of the others.

2. *Other indicia of legislative intent not to authorize multiple punishments for the same conduct*

¶32 If the facts that must be proved for the two statutes are not the same, the court must then determine if there are other indicia of legislative intent that suggest the legislature did not intend to authorize multiple punishments for the same act.

¶33 Jackman does not provide any evidence of the legislative history of the two statutes at issue here that would indicate that the legislature did not intend punishment to be imposed for an act that violates both statutes. The State contends that the legislative purpose implies that punishment is allowed for multiple convictions. It claims that when the former RCW 9.68A.020 (1980) (child pornography) was repealed in 1984 and the new statute, RCW 9.68A.040, enacted, the purpose changed from protecting children from pornography to "prevention of sexual exploitation and abuse of children." RCW 9.68A.001. The State asserts that this change in the statute's purpose "articulate[d] a high priority for protection of children, and by extension punishment of those who violate any section of the chapter." Br. of Resp't at 22. The Court of Appeals agreed with the State and found that although the statutes did not explicitly allow punishment under both statutes for the same conduct, the change in the legislative purpose of the statute "implies punishment for violation of each section of the chapter." *State v. Jackman*, 125 Wn. App. 552, 563, 104 P.3d 686 (2004).

¶34 In contrast, in *Calle* we concluded that the "differing purposes served by the incest and rape statutes, as well as their location in different chapters of the criminal code, are evidence of the Legislature's intent to punish them as separate offenses." 125 Wn.2d at 780. Here, the statutes are both part of the sexual exploitation of children section of Washington's code and they both serve the *same purpose* of preventing sexual exploitation of children. Our conclusion in *Calle*, therefore, casts the interpretation urged by the State and found by the Court of Appeals into doubt. In addition, under the rule of lenity, convictions under both statutes violate double jeopardy if the legislature's intent is unclear. *Adel*, 136 Wn.2d at 635.

¶35 If it must reach the question, we leave it to the trial court to determine whether the legislature intended to authorize multiple punishments for the same conduct in accordance with this opinion.

## V. CONCLUSION

¶36 We affirm the Court of Appeals with regard to the judicial comment issue and remand for new trial. The references to the victims' birth dates in the jury instructions constituted judicial comments on the evidence, and we cannot affirmatively conclude that the error was not prejudicial. We do not decide whether the convictions for communication with a minor for immoral purposes and sexual exploitation of a minor violated double jeopardy, but leave that issue for the trial court's consideration, if necessary, on remand.

ALEXANDER, C.J., and C. JOHNSON, MADSEN, SANDERS, BRIDGE, CHAMBERS, OWENS, and J.M. JOHNSON, JJ., concur.