IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 37022-4-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| THOMAS RAY MCBRIDE, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, C.J. — Thomas McBride appeals his conviction for possession of methamphetamine with intent to deliver. We affirm.

## FACTS

The charge against Thomas McBride stemmed from execution of a search warrant at his residence. Several individuals besides Mr. McBride were present at the time. During the search, law enforcement recovered one package of drugs, a 30-gram bag of methamphetamine located in a garbage can just outside the entrance to Mr. McBride's bedroom. Inside Mr. McBride's bedroom, officers found a scale with methamphetamine residue. Also in Mr. McBride's bedroom were numerous documents bearing Mr. McBride's name. None of the other rooms in the house contained drug evidence and none of the other bedrooms contained documents pertaining to Mr. McBride.

Mr. McBride was arrested and booked into jail. While in custody, Mr. McBride had three separate recorded conversations with two individuals, John Lawson and Kim

McBride. During the conversations, Mr. McBride complained he was arrested as the result of a snitch, he lamented about being caught, and he asked Kim McBride to distribute his belongings.

PROCEDURE

The State charged Mr. McBride with possession of methamphetamine with intent to deliver. Prior to trial, the State moved to admit Mr. McBride's recorded jail conversations. The court conducted a CrR 3.5 hearing and listened to the recordings in their entirety. Because the court found portions of the recordings difficult to understand, the court directed the prosecutor's office to prepare an unofficial transcript. The matter then went into recess.

The CrR 3.5 hearing resumed the morning of trial, prior to jury selection. At that point, the State had obtained a transcript of the recordings and provided it to the court. The State identified three excerpts from the conversations it wished to introduce to the jury. One where Mr. McBride commented to Mr. Lawson that "caught is caught." Report of Proceedings (July 8, 2019) (RP) at 52-53. The second where Mr. McBride talked to Mr. Lawson about an individual being a snitch. And the third concerned statements to Kim McBride, requesting the removal of various pieces of property from Mr. McBride's room.

2

Mr. McBride's attorney informed the court he was most concerned with the second excerpt. According to defense counsel, Mr. McBride's statement making allegations about a snitch contained hearsay. The State argued Mr. McBride's statement was an admission of a party opponent. The trial court agreed with the State and admitted all three excerpted conversations.

The matter then proceeded to trial. At the beginning of trial, the court instructed the jury:

> The law does not permit me to comment on the evidence in any way and I will not intentionally do so. By a comment on the evidence, I mean some expression or indication from me as to my opinion on the value of the evidence or the weight of it. If it appears to you that I do comment on the evidence, you are to disregard such apparent comment entirely.

*Id*. at 77. Mr. McBride's defense centered on creating a reasonable doubt as to whether he, as opposed to someone else at the residence, had possessed the methamphetamine.

The State called three law enforcement witnesses who were involved in the search, including Deputy Bryce Nebe and Sergeant Michael Jordan. While discussing a floor plan of Mr. McBride's house, the State asked Deputy Nebe the following question:

> So based on the people found in the other room—the items found in those other rooms, who would you say has control over that bedroom up— up in the corner [of the floor plan] where [the scale with methamphetamine residue was discovered]?

*Id*. at 107. Deputy Nebe answered "Thomas McBride." *Id*.

3

During direct examination of Sergeant Jordan, the prosecutor asked questions about Sergeant Jordan's familiarity with Mr. McBride and his residence. Sergeant Jordan testified he knew Mr. McBride from prior contacts and he was also familiar with the layout of Mr. McBride's home. In explaining his basis of knowledge, Sergeant Jordan stated he had executed approximately three search warrants at the residence in the past. He further explained he met Mr. McBride when Mr. McBride was living in a camper behind the residence. Because this living situation violated city code, Sergeant Jordan worked with Mr. McBride to correct the issue. Mr. McBride subsequently moved inside the residence. After moving inside the home, Mr. McBride identified his bedroom to Sergeant Jordan; it was the same room where officers later found the scale containing methamphetamine residue. During his testimony, Sergeant Jordan did not clarify whether Mr. McBride lived inside the home at the time of the prior search warrants or whether the prior search warrants had to do with the code violation problem.

The prosecutor questioned Sergeant Jordan about Mr. McBride's jail calls. The excerpts of the recorded calls were introduced into evidence and played for the jury. The prosecutor asked Sergeant Jordan to testify about the contents of the calls by reading from the transcripts. Mr. McBride objected, noting the recordings could speak for themselves. The court overruled the objection, explaining: "It's hard to hear and that's why I'm going

4

to allow the Deputy to state—to read from the transcription of what was said—exactly what was said." *Id*. at 134.

Pertinent to this appeal, Sergeant Jordan testified as follows:

- When describing the second excerpted conversation between Mr. McBride and Mr. Lawson, Sergeant Jordan testified Mr. McBride "said that [an individual he referred to as Clark was] a snitch and he straight-up snitched on him." *Id*. at 132.

- In the first excerpted conversation between Mr. Lawson and Mr. McBride, Sergeant Jordan testified Mr. Lawson said, "[D]ad said you have the right to ask whoever turned you in. You have the right to have them face you." *Id.* at 135. To this, Mr. McBride responded, "[O]h, I don't care. I mean caught is caught." *Id*. Mr. Lawson then said, "[Y]eah, it is what it is." *Id*.

- In the excerpted conversation between Mr. Lawson and Kim McBride, Sergeant Jordan testified Mr. McBride said, "that good fucking snitch; he snitched on me; straight-up told on me." *Id*. at 137. Sergeant Jordan also testified Mr. McBride told Kim McBride to "just go ahead and go in my room, take my NASCAR [National Association for Stock Car Auto Racing] stuff, my marbles. . . . [T]here's stuff in the cabinet. . . . [M]aybe my fishing

5

stuff. *Id*. at 139.

Although Sergeant Jordan read from the transcript, the transcript itself was not offered into evidence. After reading from the transcript, Sergeant Jordan explained he had found NASCAR memorabilia, a marble collection, and fishing gear in the room he had associated with Mr. McBride.

After the conclusion of trial, the jury convicted Mr. McBride as charged. Mr. McBride now appeals.

## ANALYSIS

*Transcript testimony*

Mr. McBride contends Sergeant Jordan's testimony from the jail transcript constituted double hearsay. He further asserts this violated his constitutional right to confront adverse witnesses. Mr. McBride's current contentions were not made at trial. During trial, Mr. McBride never claimed the transcript was hearsay, let alone hearsay of a constitutional magnitude. The only hearsay objection had to do with the recording, not the transcript.[1] When it came to the transcript, Mr. McBride's sole objection was that the

---

[1] At trial, Mr. McBride's attorney asserted Mr. McBride's recorded statements were inadmissible because they contained hearsay. The court correctly overruled this objection. An admission of a party opponent is not hearsay. ER 801(d)(2). Further, Mr. McBride's statement that the individual named Clark was a snitch was admissible to show consciousness of guilt, not for truth of the matter asserted. ER 801(c).

recording spoke for itself. This was not sufficient to alert the court and prosecution of a hearsay or confrontation clause challenge.

When it comes to alleged hearsay, error preservation is important. Many hearsay problems are correctable; the proponent of the evidence can simply call the hearsay declarant as a witness. A vigorous defense does not always turn on demanding the presence of a hearsay declarant for cross-examination. Some hearsay testimony is tedious and uncontested. It is, therefore, for good reason that our case law requires error preservation in the hearsay context, even when a defendant claims on appeal that introduction of hearsay implicated the constitutional right to confront witnesses. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 313 n.3, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009); *State v. Burns*, 193 Wn.2d 190, 210-211, 438 P.3d 1183 (2019). The rule under RAP 2.5(a) that the court will address unpreserved manifest constitutional errors does not apply in the context of hearsay or confrontation clause allegations. *Burns*, 193 Wn.2d at 210-11.

Normally, our analysis would end here. But the State has not raised an error preservation argument. Instead, the State agrees it was improper for Sergeant Jordan to read from the transcripts. According to the State, Mr. McBride's allegations should fail

because Sergeant Jordan's hearsay testimony was harmless beyond a reasonable doubt. Waiver works both ways. We therefore address the merits of Mr. McBride's hearsay claims.

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. ER 801(c). Certain types of hearsay are governed by the confrontation clauses of the federal and state constitutions. U.S. CONST. amend VI; WASH. CONST., art. I, § 22. Hearsay raises constitutional concerns if it is testimonial; i.e. made in anticipation of litigation, and the defendant has not previously been afforded a right of cross-examination. *Crawford v. Washington*, 541 U.S. 36, 52, 60, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

In the current context, the transcript met the criteria for a hearsay statement implicating the constitutional right to confront witnesses. The transcript was an out-of-court statement by the transcriptionist declaring what was said during Mr. McBride's jail conversations. It was offered to prove the truth of the matter asserted, i.e., what was actually said. The transcript was testimonial in that it was prepared in anticipation of trial. And Mr. McBride was never afforded the right to cross-examine the transcriptionist. Had Mr. McBride objected to introduction of the transcript on hearsay or confrontation

grounds at trial, his objection should have been sustained.[2]

While introduction of the transcript through Sergeant Jordan was an error that

implicated Mr. McBride's confrontation rights, we agree with the State that the violation

was harmless beyond a reasonable doubt. *See State v. Fisher*, 185 Wn.2d 836, 847, 374

P.3d 1185 (2016). Important to our analysis is the recordings themselves were introduced

into evidence. The portions of the recordings recounted by Sergeant Jordan's transcript

testimony were all in English and audible.[3] Thus, Mr. McBride was not deprived of any

ammunition for contesting the accuracy of the transcript testimony to the jury. While at

times Mr. McBride's manner of speech in the recordings was difficult to decipher, the

defense never contested the accuracy of the transcripts. The impact of what happened at

trial was not materially different from when the State uses an illustrative transcript to

assist the jury during presentation of audio evidence. *See State v. Cunningham*, 93 Wn.2d

823, 834-35, 613 P.2d 1139 (1980). Mr. McBride is not entitled to relief.

*Propensity and opinion testimony*

For the first time on appeal, Mr. McBride makes two challenges regarding the

---

[2] This would not have prohibited the State from utilizing the transcript as an illustrative aid.

[3] The audio exhibits of the jail calls are in the record and have been reviewed by this court.

propriety of law enforcement testimony. First, he claims Sergeant Jordan improperly introduced propensity evidence by suggesting Mr. McBride had prior criminal involvement. Second, he argues Deputy Nebe provided improper opinion testimony when he testified Mr. McBride had control over the bedroom where officers found the scale. Recognizing these contentions were not preserved, Mr. McBride alternatively claims his attorney provided ineffective assistance in failing to object to the foregoing testimony.

The State correctly argues the two direct challenges to law enforcement testimony were not preserved and are not amenable to review under RAP 2.5(a), which allows for unpreserved review of manifest constitutional errors.

Mr. McBride's criticisms of Sergeant Jordan's testimony implicate ER 404(b), not the federal or state constitutions. We disagree with Mr. McBride's bald claim that a violation of ER 404(b) implicates the due process right to a fair trial. There may be some exceptional cases where propensity evidence is so extreme and prejudicial that it rises to the level of a due process violation. But in general, "erroneous admission of ER 404(b) evidence . . . is not of constitutional magnitude." *State v. Powell*, 166 Wn.2d 73, 84, 206 P.3d 321 (2009). This case does not contain any extreme facts that would cause us to depart from the general rule. Sergeant Jordan's testimony about prior contacts with Mr. McBride was relevant to show the room where law enforcement found drug evidence

belonged to Mr. McBride. Although Sergeant Jordan's testimony could have been crafted in a way to lessen its prejudicial impact, this is a matter that should have been taken up with the trial court. It does not warrant consideration for the first time on appeal.

Deputy Nebe's testimony involved an alleged violation of ER 701, which governs the introduction of opinion testimony by a lay witness. Again, this was not a constitutional error. We recognize such lay opinion testimony can sometimes implicate a defendant's constitutional rights. This happens when a witness asserts an opinion about a defendant's guilt. *See State v. Quaale*, 182 Wn.2d 191, 340 P.3d 213 (2014). But here, Deputy Nebe did not weigh in on Mr. McBride's guilt. Deputy Nebe merely opined Mr. McBride was in control of the bedroom where officers found the scale with methamphetamine residue. Deputy Nebe did not testify Mr. McBride was in control of the drugs, which were found in the garbage can outside the bedroom. Nor did Deputy Nebe testify Mr. McBride possessed the drugs with intent to distribute. Mr. McBride's criticisms of Deputy Nebe's testimony do not merit review under RAP 2.5(a).

An allegation of ineffective assistance of counsel is the type of constitutional claim that can be raised for the first time on appeal. *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995). To establish ineffective assistance, Mr. McBride must show both deficiency of performance and prejudice. *Id*. at 333-34. When it comes to the first prong

11

of this analysis, we strongly presume defense counsel's conduct was strategic, not deficient. *State v. Kyllo*, 166 Wn.2d 856, 862-83, 215 P.3d 177 (2009). As to the second prong of the analysis, Mr. McBride must show a reasonable probability that, but for counsel's deficient performance, the results of trial would have been different. *McFarland*, 127 Wn.2d at 333-34. Failure to meet either prong of the analysis bars relief. *State v. Hendrickson*, 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996).

Mr. McBride has not shown defense counsel was ineffective in failing to object to Sergeant Jordan's testimony. As previously noted, much of Sergeant Jordan's testimony was relevant to showing Mr. McBride resided in the room where officers found the scale containing methamphetamine residue. Had defense counsel objected to portions of the testimony, such as the fact that officers had previously executed three search warrants at the residence, the prejudicial aspect of the testimony may have only been emphasized to the jury, thereby enhancing its potential for prejudice. As it stands, Sergeant Jordan's testimony was not particularly prejudicial. From the testimony, it appears Sergeant Jordan's prior interactions with Mr. McBride were focused on improving Mr. McBride's living circumstances. This evidence did not portray Mr. McBride in a negative light. If anything it may have generated some sympathy. Nor did Sergeant Jordan clarify whether

Mr. McBride was living inside the home at the time he executed the prior search warrants. Counsel did not behave unreasonably in failing to object.

Counsel was also not ineffective in failing to object to Deputy Nebe's testimony. At trial, counsel did not contest the fact that the bedroom where officers found the scale with methamphetamine residue belonged to Mr. McBride. All three law enforcement witnesses characterized the room as Mr. McBride's, the overwhelming evidence at trial showed the room belonged to Mr. McBride, and defense counsel repeatedly referred to the room in question as Mr. McBride's room. Had defense counsel objected to Deputy Nebe's opinion testimony about the uncontested fact that Mr. McBride occupied the room where the scale was found, they may have lessened their own credibility with the jury. We will not fault defense counsel's decision not to object to this testimony.

*Judicial comments*

Mr. McBride contends the trial court violated the appearance of fairness doctrine and improperly commented on the evidence. His claims are based on the trial court's request that Sergeant Jordan focus his testimony on certain portions of the transcript. According to Mr. McBride, this suggested to the jury the court had sided with the prosecution and the court believed certain aspects of the transcript were particularly

important. Mr. McBride also claims the trial court's comments improperly suggested to the jury the transcript was accurate.

Although Mr. McBride did not object to the judge's comments at the time of trial, the State again does not argue waiver. Instead, the State claims the judge's comments were harmless.

We agree the judge's comments were not prejudicial.[4] First, the reason the judge directed Sergeant Jordan to read from specific lines of the transcript is the parties had agreed only portions of Mr. McBride's conversations were admissible. It was reasonable for the court to take steps to ensure Sergeant Jordan did not stray beyond the scope of the parties' agreement. This action did not suggest the court sided with the prosecution.

Second, there was no dispute at trial as to the transcript's accuracy. While the trial court should not have stated the transcript set forth "exactly what was said," RP at 134, this brief comment did not impact the jury's ability to independently assess the merits of Mr. McBride's case. The trial court's comments did not go to the elements of the offense and thus did not relieve the State of its burden to prove its case to the jury. *See State v.*

---

[4] When it comes to an improper judicial comment, we presume the comment is prejudicial "and the burden is on the State to show that the defendant was not prejudiced, unless the record affirmatively shows that no prejudice could have resulted." *State v. Levy*, 156 Wn.2d 709, 725, 132 P.3d 1076 (2006).

No. 37022-4-III
*State v. McBride*

*Jackman*, 156 Wn.2d 736, 743-44, 132 P.3d 136 (2006). Furthermore, the court instructed the jury that nothing about its statements should be considered a comment on the evidence. We find no possibility the trial judge's brief comment impacted the jury's assessment of Mr. McBride's case or altered the outcome of trial.

CONCLUSION

The judgment of conviction is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____, C.J.
Pennell, C.J.

WE CONCUR:

_____
Siddoway, J.

_____
Korsmo, J.P.T.[5]

---

[5] Judge Kevin M. Korsmo was a member of the Court of Appeals at the time argument was held on this matter. He is now serving as a judge pro tempore of the court pursuant to RCW 2.06.150.