# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47347-0-II |
| Respondent, | |
| v. | |
| JOSE FLORES-RODRIGUEZ, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Jose Flores-Rodriguez was convicted of felony communicating with a minor for immoral purposes (count 1); third degree rape of a child with an aggravating factor that the rape was part of an ongoing pattern of sexual abuse of the same victim under the age of 18 years old, manifested by multiple incidents over a prolonged period of time (count 2); and sexual exploitation of a minor (count 3). He appeals, arguing that (1) the State committed prosecutorial misconduct; (2) he received ineffective assistance of counsel; (3) the trial court abused its discretion in granting the State two continuances that violated his time for trial rights; (4) the charging information was deficient; (5) double jeopardy bars his convictions of communicating with a minor for immoral purposes and sexual exploitation of a minor; and (6) the trial court improperly commented on the evidence. We affirm.

No. 47347-0-II

FACTS

A.      BACKGROUND FACTS

Flores-Rodriguez was married to Markee Bouback. Sometime in early 2013, Markee's 14-year-old niece, L.C.,[1] the daughter of Markee's sister, Sheila Bouback,[2] lived with Markee and Flores-Rodriguez for approximately three to four months. L.C. told Markee that she had kissed Flores-Rodriguez. At that point, L.C. moved out.

Sometime in 2014, Flores-Rodriguez contacted L.C. through Facebook and told her that he needed to talk. Flores-Rodriguez instructed L.C. to create a different Facebook account in the name of "Ralee Mafie." Verbatim Report of Proceedings (VRP) (Jan. 13, 2015) at 119. He told her that he would create a Facebook account in the name of "Alan Knot." VRP (Jan. 13, 2015) at 119. The Facebook accounts communicated exclusively with each other. Flores-Rodriguez messaged L.C. and instructed her to ask Markee if she could stay the night at Markee's and Flores-Rodriguez's home. L.C. asked Markee, and she stayed the night. When L.C. stayed at their home, Flores-Rodriguez would have sexual intercourse with her most of the time. Flores-Rodriguez and L.C. messaged each other through Facebook regularly, and L.C. considered it to be a romantic relationship.

In June 2014, L.C. went to Oregon to visit her family for the summer. When she was in Oregon, she and Flores-Rodriguez communicated through Facebook and video chatted on her

---

[1] We use initials to protect the witness's identity. General Order 2011-1 of Division II, *In Re The Use Of Initials Or Pseudonyms For Child Witnesses In Sex Crime Cases*, available at: http://www.courts.wa.gov/appellate_trial_courts/

[2] Because Markee and Sheila share a surname, we refer to them individually by their first name for clarity. We intend no disrespect.

2

tablet. Flores-Rodriguez asked L.C. to take off her clothing and expose herself on video chat, and also to take and send to him nude photographs of herself.

When L.C. got a new tablet, Flores-Rodriguez reminded her to delete all of her messages from her old tablet. He instructed L.C. that, if anyone asked her who she was chatting with, to tell people it was someone named Dillon. Flores-Rodriguez told L.C. that she was not allowed to tell anyone that she was chatting to him. Flores-Rodriguez would become angry with L.C. and tell her that she could "make it up [to him] by sending [nude] pics" of herself. VRP (Jan. 14, 2015) at 156. Flores-Rodriguez and L.C. had sexually explicit conversations through Facebook, discussing having sex with each other.

When L.C. returned home from Oregon in early August 2014, she and Flores-Rodriguez had two sexual encounters. On August 3, 2014, L.C. was logged into the "Ralee Mafie" Facebook account on Sheila's cell phone. Sheila went into L.C.'s bedroom to retrieve her cell phone that L.C. had fallen asleep with. Sheila noticed the account was logged into a Facebook account she was not familiar with and checked the messages. Sheila was concerned about the sexually explicit messages and woke up L.C. After talking to L.C., Sheila went to Markee's home to confront Flores-Rodriguez. Sheila accused Flores-Rodriguez of raping L.C. Flores-Rodriguez laughed at her and told her to "prove it." VRP (Jan. 13, 2015) at 54. Flores-Rodriguez also told Sheila that he had herpes and that if he was raping L.C., L.C. would have herpes too. Sheila called the police.

Flores-Rodriguez was arrested, and the police took possession of his cell phone and laptop computer, both of which had internet access, and "asked if there was anything else [he] had." VRP (Jan. 14, 2015) at 182. Flores-Rodriguez told police that he also a gaming console, but the police did not confiscate that.

The State charged Flores-Rodriguez with communicating with a minor for immoral purposes[3] (count 1); third degree rape of a child,[4] with an aggravating factor that the rape of a child was part of an ongoing pattern of sexual abuse of the same victim under the age of 18 years old, manifested by multiple incidents over a prolonged period of time[5] (count 2); and sexual exploitation of a minor[6] (count 3). All three counts alleged a charging period between July 1, 2014 and August 3, 2014.

B.    PROCEDURAL HISTORY

Flores-Rodriguez was arraigned on September 2, 2014. Trial was set for October 28, 2014. Flores-Rodriguez remained in custody awaiting trial. On October 6, the State represented to the trial court that if the parties could not resolve the case, it would likely be asking for a continuance due to scheduling conflicts with another trial. On October 13, the deputy prosecutor assigned to the case told the trial court that she would be in a first degree murder trial. She also told the trial court that she had been working with L.C. and L.C.'s family, and believed that the case could not be transferred to another deputy prosecutor without prejudice to the State. The trial court, finding good cause based on the deputy prosecutor's representations, granted the State's request for a continuance. The trial was continued to December 2.

---

[3] RCW 9.68A.090(2).

[4] RCW 9A.44.079.

[5] RCW 9.94A.535(3)(g).

[6] RCW 9.68A.040.

On November 17, the State asked for another continuance because the assigned deputy prosecutor was set to be in trial in three cases. Also, the assigned deputy prosecutor had been elected to be the county prosecutor and was scheduled to attend a training for newly elected officials, which the prosecutor had just received notice of the previous Friday. The training was only offered every four years when county officials go through the election cycle, and the prosecutor could not otherwise obtain the training. The trial court, finding good cause, granted the second continuance and later issued an order setting the new trial date for January 6, 2015. Flores-Rodriguez was brought to trial on January 6, 2015. Flores-Rodriguez objected to each of the State's requests for continuances, but acknowledged that he was not prejudiced.

C.   TRIAL

The State called Markee to testify at trial. Flores-Rodriguez objected and moved to prevent her from testifying on the basis of spousal privilege. After argument and hearing from Markee, the trial court denied Flores-Rodriguez's motion and allowed Markee to testify. Markee testified that Flores-Rodriguez gave her herpes.

Sheila also testified at trial. Sheila's testimony was consistent with the facts presented above.

L.C. also testified to the above events. L.C. testified that when she was 12 1/2 years old, Flores-Rodriguez had sexual intercourse with her and told her that he loved her. She further testified that she had sexual encounters with Flores-Rodriguez when she did not want to because he would get mad at her.

Flores-Rodriguez objected to L.C.'s testimony that she engaged in a sexual relationship with him outside of the charging period. The State argued that Flores-Rodriguez was charged with

an aggravator, which required the State to prove that the period charged was the culmination of multiple incidents over a prolonged period of time, and the State was entitled to prove that aggravating factor. Following an offer of proof and argument, the trial court overruled Flores-Rodriguez's objection, ruling that the evidence was admissible.

The State asked L.C. whether she had had any medical issues with her mouth. L.C. said yes. The State asked, "What's going on," and L.C. said, "They're not for sure yet." VRP (Jan. 13, 2015) at 137. At that point, Flores-Rodriguez objected. The trial court sustained the objection as to what anyone told L.C. The State rephrased the inquiry, "Can you describe what—what you've experienced—" and Flores-Rodriguez objected to the "line of questioning." VRP (Jan. 13. 2015) at 137. The trial court heard the objection outside the presence of the jury. Flores-Rodriguez argued that the State was suggesting that L.C. had herpes without presenting any medical evidence. Flores-Rodriguez argued that the State was going to "talk about something that she has on her mouth and conclude that she got herpes and got it from" Flores-Rodriguez. VRP (Jan. 13, 2015) at 138-39. The trial court sustained defense counsel's objection, excluding the State's line of questioning regarding herpes. The trial court instructed the jury that it had "sustained the objection to the last question and answer, so disregard that." VRP (Jan. 13, 2015) at 140.

Flores-Rodriguez reviewed the trial court's jury instructions and affirmatively stated that he had no objections or exceptions, was not proposing any other instructions, and found them appropriate. The trial court instructed the jury that a separate crime was charged in each count and each count must be decided separately. The trial court also instructed the jury that "a prolonged period of time," as it appears in the aggravator to count 2, meant more than a few weeks. Clerk's Papers at 10 (Jury Instruction 13); *see* CP at 5.

During closing arguments, the State argued that Flores-Rodriguez took steps to safeguard his relationship with L.C., like setting up fake Facebook accounts and deleting messages, which may explain the lack of evidence of the messages on the devices that police recovered from Flores-Rodriguez. The State further argued that other means of communication are readily available: "these things are readily available, a smart phone, TracFone[7] or the PS3 which wasn't seized. He said that, you know, that was something that he could have used to communicate." VRP (Jan. 14, 2015) at 195-96.

During Flores-Rodriguez's closing argument, he argued:

> [L.C.] has demonstrated to you through her own testimony and through the book that she has the amount to create a new account with another person and has no friends. So if you can make an account in the name of a girl that has one friend and a guy, then all of a sudden a guy and a girl you can open up both of those windows on a computer at the same time and have a discussion with yourself. She didn't have a discussion with Mr. Rodriguez. Although she paints enough in there to have this fantasy world and sends pictures.

VRP (Jan. 14, 2015) at 209. In the State's rebuttal argument, the prosecutor responded:

> What counsel wants is he wants you to hear hoofbeats and think zebras and when you hear hoofbeats it's horses. It is the common sense answer. There is no evidence other than counsel's speculation.
>
> What evidence is there that [L.C.] was having a conversation with herself? It makes no sense and there [is] no evidence to support it. . . . Is it possible? It is possible that [she] had this conversation with herself, but that's not what happened here. And your common sense tells you that.

VRP (Jan. 14, 2015) at 216-17.

---

[7] A "TracFone" is a prepaid wireless telephone, which are commonly referred to as "burner" phones. It is a subsidiary of Mexico's largest telecommunications company. https://en.wikipedia.org/wiki/TracFone_Wireless. The State's closing argument is the only time that it appears it in the record.

The prosecutor also argued in rebuttal that "[Flores-Rodriguez] had sex with a child. He took from her digital photographs that end up who knows where, he exposed her to herpes, and he shouldn't walk away from that." VRP (Jan. 14, 2015) at 220.

The jury found Flores-Rodriguez guilty as charged, and through special verdict, found that count 2 was part of an ongoing pattern of sexual abuse of the same victim under the age of 18 years manifested by multiple incidents over a prolonged period of time. Flores-Rodriguez appeals.

## ANALYSIS

A.   PROSECUTORIAL MISCONDUCT

To prevail on a claim of prosecutorial misconduct, a defendant must show that the prosecutor's conduct was both improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). We first determine whether the prosecutor's conduct was improper. *Id.* at 759. If the prosecutor's conduct was improper, then we determine whether the prosecutor's improper conduct resulted in prejudice. *Id.* at 760. Prejudice is established by showing a substantial likelihood that the prosecutor's misconduct affected the verdict. *Id.* at 760-61. "In analyzing prejudice, we do not look at the comments in isolation, but in the context of the total argument, the issues in the case, the evidence, and the instructions given to the jury." *State v. Warren*, 165 Wn.2d 17, 28, 195 P.3d 940 (2008), *cert. denied*, 556 U.S. 1192 (2009).

If a defendant does not object at trial, he or she is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured any resulting prejudice. *Emery*, 174 Wn.2d at 760-61. Under this heightened standard of review, the defendant must show that "(1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial

likelihood of affecting the jury verdict.'" *Id.* at 761 (quoting *State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)). In making that determination, we "focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured." *Id.* at 762.

1.      Facts Not in Evidence

Flores-Rodriguez argues that the prosecutor improperly argued facts not in evidence when the prosecutor "twice told the jury that [he] could have used his PlayStation to communicate with [L.C.]"; and when the prosecutor insinuated that he distributed child pornography.[8] Br. of Appellant at 14. We disagree.

The State has wide latitude to argue inferences from the evidence. *State v. Pierce*, 169 Wn. App. 533, 553, 280 P.3d 1158, *review denied*, 175 Wn.2d 1025 (2012). But it is improper to urge the jury to decide a case based on evidence outside the record. *Id.*

During closing arguments, the State argued that the lack of evidence of messages on Flores-Rodriguez's cell phone and laptop computer was reasonable because Flores-Rodriguez took steps to safeguard his relationship with L.C., like setting up fake Facebook accounts and deleting messages. The State further argued that other means of communication are readily available: "these things are readily available, a smart phone, TracFone or the PS3 [game console] which wasn't seized. He said that, you know, that was something that he could have used to communicate." VRP (Jan. 14, 2015) at 195-96.

---

[8] Flores-Rodriguez does not offer the actual statements he alleges are improper, and the record does not demonstrate that the prosecutor referenced a PlayStation twice. The word "PlayStation" or "PS3," as the prosecutor referred to it as, appear only once during the State's closing argument. VRP at 195. Additionally, his citations to the record appear to be roughly one to two pages off.

The prosecutor's argument is a reasonable inference from the evidence. Police took Flores-Rodriguez's phone and laptop that had internet access, and asked if there was anything else. Flores-Rodriguez offered the PlayStation. It is a reasonable inference from the evidence that "anything else" refers to anything else with internet capabilities. And from the fact that Flores-Rodriguez offered the PlayStation in response, it is a reasonable inference that his PlayStation had internet access. Thus, based on the evidence presented at trial, the prosecutor's argument was not improper because the argument was a reasonable inference from the evidence. Flores-Rodriguez did not object, and he has not demonstrated that the prosecutor's remark was improper. Furthermore, even if the remark was improper, he has not demonstrated that it could not have been remedied with a curative instruction. Accordingly, Flores-Rodriguez's claim fails.

Flores-Rodriguez also argues that the prosecutor insinuated that Flores-Rodriguez disseminated the nude photos that L.C. sent. Flores-Rodriguez is, presumably, referring to the following remark in rebuttal closing argument: "He had sex with a child. He took from her digital photographs that end up who knows where." VRP (Jan. 14, 2015) at 220.

Flores-Rodriguez did not object. And despite his dramatic characterization on appeal, the prosecutor did not argue that Flores-Rodriguez distributed or "trafficked in" child pornography. Reply Br. of Appellant at 2. The remark lacks two important components that would truly make it suggest that he distributed child pornography: it does not point to Flores-Rodriguez as an actor, and it does not suggest any actions he, or anyone, took. Instead, it passively suggests that the photographs "end[ed] up" somewhere, without suggesting how they got there or by whose agency. VRP (Jan. 14, 2015) at 220. Thus, it does not imply or suggest any level of intent in distributing, or that Flores-Rodriguez took any action to result in the photographs being disseminated. The

10

remark does not suggest that Flores-Rodriguez controlled where the photographs ended up. The sentence suggests he took the photographs from her, which L.C. testified to, and that after that, it is unknowable where the pictures went.[9] Furthermore, even if the remark was improper, Flores-Rodriguez merely argues "society's extreme condemnation of such conduct." He does not demonstrate that the remark could not have been cured with an instruction had he objected. *See* Br. of Appellant at 15. Had he objected, the trial court could have reminded the jury that the lawyers' remarks are not evidence.

2.        Appealing to Passion and Prejudice of Jury

Flores-Rodriguez contends that the prosecutor's insinuation that he distributed child pornography and referenced the evidence that he suffers from a sexually transmitted disease were improper appeals to the passion and prejudice of the jury. The State asserts that this one statement is not "so inflammatory as to change the course of the entire trial." Br. of Resp't at 11. We agree with the State.

During rebuttal closing arguments, the prosecutor argued that "He had sex with a child. He took from her digital photographs that end up who knows where, he exposed her to herpes, and he shouldn't walk away from that." VRP (Jan. 14, 2015) at 220. Flores-Rodriguez did not object. Objections are critical to give the trial court opportunity to cure any error. *See Emery*, 174 Wn.2d at 761-62. It is Flores-Rodriguez's burden to demonstrate that the improper remark could not have been remedied with a curative instruction. *Id.* at 761.

---

[9] Flores-Rodriguez asserts that the record does not contain evidence that anyone disseminated the pictures and that they were only available to the person who controlled the Facebook account. He does not provide any support for this claim, nor does he explain how it affects our analysis in determining whether any error could have been cured by a jury instruction.

Flores-Rodriguez asserts that a curative instruction would have been futile because evidence of a party's sexual conduct and sexually transmitted diseases pose a serious risk of unfair prejudice. Flores-Rodriguez's argument misconstrues the relevant inquiry here. The relevant question here is not whether the evidence is prejudicial—the question is whether the State's remark in closing argument could have been remedied by a curative jury instruction if Flores-Rodriguez had objected. Flores-Rodriguez merely makes a bald statement that the prosecutor's remarks prejudiced him. Thus, he fails to show that this remark could not have been cured with an instruction. Further, the jury was instructed that the lawyers' arguments are not evidence and to disregard any statement not supported by the evidence or the court's instructions on the law. We presume that the jury follows instructions. *Warren*, 165 Wn.2d at 29. Accordingly, because Flores-Rodriguez has not demonstrated that any error could not have been cured with an instruction, his claim of prosecutorial misconduct fails.

3.     Presumption of Innocence

Flores-Rodriguez argues that the State improperly shifted the burden of proof and undermined the presumption of innocence. Specifically, he argues that the prosecutor repeatedly told the jury that Flores-Rodriguez had adduced no evidence or testimony.[10] We disagree.

"Arguments by the prosecution that shift or misstate the State's burden to prove the defendant's guilt beyond a reasonable doubt constitute misconduct." *State v. Lindsay*, 180 Wn.2d 423, 434, 326 P.3d 125 (2014). A prosecutor may, however, argue that evidence does not support a defense theory and present a fair response to defense counsel's arguments. *State v. Russell*, 125

---

[10] Flores-Rodriguez does not indicate which statements he specifically claims were erroneous.

Wn.2d 24, 87, 882 P.2d 747 (1994). And even clearly improper remarks do not require reversal "if they were invited or provoked by defense counsel and are in reply to his or her acts and statements, unless the remarks are not a pertinent reply or are so prejudicial that a curative instruction would be ineffective." *Id.* at 86.

Flores-Rodriguez mischaracterizes the State's closing argument. During Flores-Rodriguez's closing argument, he argued that L.C. created the Facebook profiles and was having a conversation with herself.

In the State's rebuttal argument, the prosecutor argued:

What counsel wants is he wants you to hear hoofbeats and think zebras and when you hear hoofbeats it's horses. It is the common sense answer. There is no evidence other than counsel's speculation.

What evidence is there that [L.C.] was having a conversation with herself? It makes no sense and there [is] no evidence to support it.

. . . .

Is it possible? It is possible that [she] had this conversation with herself, but that's not what happened here. And your common sense tells you that.

VRP (Jan. 14, 2015) at 216-17.

The State's remarks were in direct response to Flores-Rodriguez's closing argument that L.C. created the entire situation in a fantasy world. The State was entitled to respond to Flores-Rodriguez's arguments. *Russell*, 125 Wn.2d at 86. Flores-Rodriguez has not demonstrated the State's argument was improper, and his claim of prosecutorial misconduct fails.

4.      Cumulative Error

Flores-Rodriguez argues that the cumulative effect of prosecutorial misconduct merits reversal. "The cumulative error doctrine applies where a combination of trial errors denies the accused a fair trial even where any one of the errors, taken individually, may not justify reversal." *In re Det. of Coe*, 175 Wn.2d 482, 515, 286 P.3d 29 (2012). Flores-Rodriguez has not identified any instances of prosecutorial misconduct; accordingly, his claim fails.

B.      INEFFECTIVE ASSISTANCE OF COUNSEL

Flores-Rodriguez argues that trial counsel was ineffective when he failed: (1) to move to exclude irrelevant and unfairly prejudicial evidence; (2) to request a limiting instruction regarding Flores-Rodriguez's alleged prior sexual misconduct with L.C. before the time period charged; and (3) to object to the prosecutor's improper arguments. His claim fails.

We review ineffective assistance of counsel claims de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To establish ineffective assistance of counsel, Flores-Rodriguez must show both deficient performance and resulting prejudice. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). If Flores-Rodriguez fails to establish either prong of the ineffective assistance of counsel test, we need not inquire further. *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726, *review denied*, 162 Wn.2d 1007 (2007).

Deficient performance occurs when counsel's performance falls below an objective standard of reasonableness. *State v. Stenson*, 132 Wn.2d 668, 705, 940 P.2d 1239 (1997), *cert. denied*, 523 U.S. 1008 (1998). "[C]ounsel's performance is not deficient if it can be characterized as a legitimate trial tactic." *State v. McLean*, 178 Wn. App. 236, 247, 313 P.3d 1181 (2013), *review denied*, 179 Wn.2d 1026 (2014). There is a strong presumption of effective assistance, and

Flores-Rodriguez bears the burden of demonstrating the absence of a strategic reason for the challenged conduct. *State v. McNeal*, 145 Wn.2d 352, 362, 37 P.3d 280 (2002). To show prejudice, Flores-Rodriguez must demonstrate that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *McFarland*, 127 Wn.2d at 335.

We view the decisions of whether and when to object as "classic example[s] of trial tactics." *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662, *review denied*, 113 Wn.2d 1002 (1989). It is a legitimate trial tactic to forego an objection in circumstances where counsel wishes to avoid highlighting certain evidence. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 714, 101 P.3d 1 (2004). Where a defendant bases his ineffective assistance of counsel claim on trial counsel's failure to object, the defendant must show that the objection would likely have succeeded. *State v. Gerdts*, 136 Wn. App. 720, 727, 150 P.3d 627 (2007). "The absence of an objection by defense counsel strongly suggests to a court that the argument or event in question did not appear critically prejudicial to an appellant in the context of the trial." *State v. Edvalds*, 157 Wn. App. 517, 525-26, 237 P.3d 368 (2010), *review denied*, 171 Wn.2d 1021 (2011). "'Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal.'" *State v. Johnston*, 143 Wn. App. 1, 19, 177 P.3d 1127 (2007) (quoting *Madison*, 53 Wn. App. at 763).

1.    Herpes Evidence

Flores-Rodriguez argues that defense counsel was ineffective for failing to exclude his wife's testimony regarding herpes. We disagree.

Without deciding whether defense counsel was deficient for failing to seek exclusion of his wife's testimony regarding herpes, we hold that Flores-Rodriguez fails to show any resulting prejudice. The jury heard evidence regarding Flores-Rodriguez's herpes before his wife's testimony when L.C.'s mother testified that Flores-Rodriguez referenced his herpes when she confronted him about his relationship with L.C. Because the jury heard evidence that Flores-Rodriguez had herpes independent of his wife's testimony, Flores-Rodriguez fails to demonstrate that there is a reasonable probability the outcome would have been different had defense counsel moved to exclude herpes testimony from Flores-Rodriguez's wife.

Flores-Rodriguez also asserts that defense counsel was ineffective by failing to move to exclude L.C.'s testimony regarding medical problems with her mouth or request an instruction that the jury disregard that testimony. Flores-Rodriguez misrepresents what occurred below.

Flores-Rodriguez objected to the State's "line of questioning" regarding L.C.'s medical issues with her mouth. VRP (Jan. 13, 2015) at 137. The trial court sustained his objection. To the extent Flores-Rodriguez argues that defense counsel should have objected to the first question (whether she has had any medical issues) and should not have waited until the subsequent question ("what's going on?"), that argument fails. Decisions about when and how to object are "classic example[s] of trial tactics." *Madison*, 53 Wn. App. at 763. And because defense counsel's decision to object to the subsequent question is a legitimate trial tactic, it cannot form the basis of Flores-Rodriguez's claim of ineffective assistance of counsel.

To the extent that Flores-Rodriguez argues that the trial court's instruction to disregard the State's question was insufficient, that claim also fails because counsel may have not wanted to further highlight the evidence, and did not find the question, whether L.C. suffered a medical issue,

16

prejudicial enough to warrant another disruption, which is a reasonable trial tactic. *See Davis*, 152 Wn.2d at 714; *Edvalds*, 157 Wn. App. at 525-26. Thus, Flores-Rodriguez's claim of ineffective of assistance of counsel fails.

2.       Sexual Encounters Before Charging Period

Flores-Rodriguez argues that defense counsel was deficient for failing to request a limiting instruction to L.C.'s testimony that Flores-Rodriguez had sexual encounters with her over a year before the charging period. His argument fails.

A limiting instruction would have highlighted the evidence of the sexual encounters. Therefore, we can presume that counsel's decision not to request a limiting instruction was a legitimate trial strategy because the instruction would have reemphasized damaging evidence. *State v. Donald*, 68 Wn. App. 543, 551, 844 P.2d 447 ("We can presume trial counsel decided not to ask for a limiting instruction as a trial tactic so as not to reemphasize this very damaging evidence."), *review denied*, 121 Wn.2d 1024 (1993).

Furthermore, Flores-Rodriguez objected to L.C.'s testimony that she engaged in sexual encounters with Flores-Rodriguez outside of the charging period. Following an offer of proof and argument, the trial court overruled his objection, ruling that the evidence was admissible. Defense counsel may have not requested a limiting instruction because he had just unsuccessfully argued the issue and did not want to make an unsuccessful objection in front of the jury. Decisions about whether to and when to object are issues of trial strategy. *Madison*, 53 Wn. App. at 763. Because Flores-Rodriguez cannot demonstrate that counsel was deficient, his claim of ineffective of assistance fails.

3.      Failure to Object to Alleged Prosecutorial Misconduct

Flores-Rodriguez argues that counsel was ineffective for failing to object to alleged instances of prosecutorial misconduct. But, as discussed above, his claims of prosecutorial misconduct fail. Therefore, Flores-Rodriguez's claim of ineffective assistance of counsel fails.

C.      Time For Trial Under CrR 3.3

1.      Legal Principles

A defendant held in custody pending trial must be tried within 60 days of arraignment. CrR 3.3(b)(1)(i); *State v. Ollivier*, 178 Wn.2d 813, 823, 312 P.3d 1 (2013). However, CrR 3.3(f)(2) allows the trial court to continue the trial date "when such continuance is required in the administration of justice and the defendant will not be prejudiced in the presentation of his or her defense." The decision whether to grant or deny a motion to continue lies within the sound discretion of the trial court and will not be disturbed absent a showing that it was manifestly unreasonable or exercised on untenable grounds or for untenable reasons. *State v. Kenyon*, 167 Wn.2d 130, 135, 216 P.3d 1024 (2009).

Continuances granted by the court are excluded from the computation of time. CrR 3.3(e)(3). In granting the continuance, the court must "state on the record or in writing the reasons for the continuance." CrR 3.3(f)(2).

2.  Challenge to Continuances

Flores-Rodriguez assigns error to the continuances granted on October 13, 2014 and November 17, 2014. He argues that the trial court granted both continuances on untenable grounds and, therefore, abused its discretion. We disagree.

The trial court granted the State's first request for a trial continuance from October 28 to December 2, finding good cause based on the deputy prosecutor's representations to the trial court that she would be in a first degree murder trial. Further, the State represented to the trial court that the deputy prosecutor had been working with L.C. and L.C.'s family, and believed that the case could not be transferred to another prosecutor without prejudice to the State.

Similarly, the trial court found good cause to grant the State's second request for a trial continuance from December 2 to January 6, based on the scheduling conflicts arising from the assigned deputy prosecutor having three other trials set at the same time and having mandatory training because she was elected the county prosecutor. Trial preparation and scheduling conflicts may be valid reasons for continuances. *State v. Flinn*, 154 Wn.2d 193, 200, 110 P.3d 748 (2005); *accord State v. Chichester*, 141 Wn. App. 446, 454, 170 P.3d 583 (2007) ("When a prosecutor is unavailable due to involvement in another trial, a trial court generally has discretion to grant the State a continuance unless there is substantial prejudice to the defendant in the presentation of his defense."); *see also State v. Raper*, 47 Wn. App. 530, 539, 736 P.2d 680 ("This court has rejected the argument that a prosecutor's unavailability because of a scheduling conflict is akin to docket congestion and self-created hardship."), *review denied*, 108 Wn.2d 1023 (1987). Given the circumstances, the trial court did not abuse its discretion in granting the continuances.

Flores-Rodriguez repeatedly asserts that the continuances were based on court congestion, arguing that the trial court made insufficient findings to justify the continuances. But this argument misrepresents the record.

The trial court did not grant the continuances due to court congestion; instead, it granted the continuances at the State's request due to trial preparation and scheduling conflicts. "[T]rial preparation and scheduling conflicts may be valid reasons for continuances beyond the time for trial period, court congestion is not." *Flinn*, 154 Wn.2d at 200. Thus, Flores-Rodriguez's argument about continuances due to court congestion are inapposite. The trial court granted the continuances in this case for the valid reasons of trial preparation and scheduling conflicts.

Furthermore, Flores-Rodriguez was timely brought to trial on January 13, 2015, 42 days into the 60 day time-for-trial requirement under CrR 3.3(b)(1)(i). Flores-Rodriguez's time-for-trial time began running when he was arraigned on September 2, 2014. The State requested, and the trial court granted, the first continuance 42 days later, on October 13, 2014. The trial court continued the trial to December 2, 2014. On November 17, 2014, the State requested a second continuance. The trial court again granted the continuance and reset the trial date to January 6, 2015. The time between October 13, 2014 and January 6, 2015 is excluded from the computation of time for trial. CrR 3.3(e)(3). Trial began on January 6, 2015. Thus, pursuant to the time periods excluded under CrR 3.3(e), Flores-Rodriguez was tried 42 days after he was arraigned, which is within the time-for-trial requirement of 60 days. Therefore, we hold that Flores-Rodriguez's time-for-trial rights were not violated because the trial court did not abuse its discretion in granting the two continuances and because Flores-Rodriguez timely proceeded to trial.

D.    SUFFICIENCY OF THE CHARGING DOCUMENT

Flores-Rodriguez claims that the charging information was deficient because it omitted an essential element of communicating with a minor for immoral purposes.[11]  Specifically, Flores-Rodriguez argues that the information failed to allege the essential element that the immoral purposes involved sexual misconduct.  We disagree.

An information must contain all essential elements of a crime to give the accused proper notice of the crime charged so that he can prepare an adequate defense.  *State v. Williams*, 162 Wn.2d 177, 183, 170 P.3d 30 (2007); *State v. Kjorsvik*, 117 Wn.2d 93, 101, 812 P.2d 86 (1991). To satisfy this requirement, the information must allege each essential element of the charged offense.  *State v. Johnson*, 180 Wn.2d 295, 300, 325 P.3d 135 (2014).  The State is not required to include definitions of elements in the information.  *Id.* at 302 ("It was enough that the State alleged all of the essential elements found in the unlawful imprisonment statute.").  "If the State fails to allege every essential element, then the information is insufficient and the charge must be dismissed without prejudice."  *Id.* at 300-01.  We review challenges to the sufficiency of a charging document de novo.  *Williams*, 162 Wn.2d at 182.

The State charged Flores-Rodriguez with one count of communicating with a minor for immoral purposes, which is codified under RCW 9.68A.090(2).  The information provided that

---

[11] Flores-Rodriguez notes that the charging information also cited a nonexistent statute for the count.  He is correct.  The information cited "RCW 9.68A.3090(2)."  CP at 4.  The correct statute is RCW 9.68A.090.  Flores-Rodriguez does not argue that this error prejudiced him, or offer additional argument or authority.  Therefore, we do not address this issue.  *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

Flores-Rodriguez communicated with a minor "for immoral purposes through the sending of electronic communications." CP at 4. RCW 9.68A.090(2) provides:

> (2) A person who communicates with a minor for immoral purposes is guilty of a class C felony punishable according to chapter 9A.20 RCW . . . if the person communicates with a minor or with someone the person believes to be a minor for immoral purposes . . . through the sending of an electronic communication.

Flores-Rodriguez argues that communicating with a minor for immoral purposes requires proof that "immoral purpose" involves sexual misconduct, rendering sexual misconduct an essential element of the charge. Br. of Appellant at 41. But "sexual misconduct" is not an essential element of the charge; rather, "sexual misconduct" defines the scope of the immoral purpose. *State v. Hosier*, 157 Wn.2d 1, 11, 133 P.3d 936 (2006); *accord State v. McNallie*, 120 Wn.2d 925, 933, 846 P.2d 1358 (1993) (affirming the trial court's instruction defining "immoral purposes" as "immoral purposes of a sexual nature"). Because "sexual misconduct" defines the scope of immoral purposes and definitions do not need to be included in the charging information, Flores-Rodriguez's claim fails.[12]

Flores-Rodriguez relies on *McNallie* and *Schimmelpfennig*. But neither case holds that "sexual misconduct" is an essential element or that it must be included in the charging information. And neither case supports his position that "sexual misconduct" is an essential element.

---

[12] Flores-Rodriguez relies on pattern jury instructions for crimes involving true threats. But Flores-Rodriguez does not offer authority that pattern jury instructions for a separate offense govern whether "sexual misconduct" is an essential element of the offense at issue. In the absence of authority, Flores-Rodriguez's discussion of true-threat crimes is unpersuasive. RAP 10.3(a)(6); *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

In *McNallie*, the defendant argued that the trial court erred by *instructing the jury* that, to convict the defendant of communicating with a minor for immoral purposes, the jury had to find that he communicated with the named child for purposes of a sexual nature. 120 Wn.2d at 929. Therefore, *McNallie* is not applicable to a challenge to the adequacy of a charging document.

*Schimmelpfennig* is also distinguishable. In *Schimmelpfennig*, the court addressed whether RCW 9.68A.090 was unconstitutionally vague, arguing that "immoral purposes" was "insufficient to provide ascertainable standards to guide conduct." 92 Wn.2d 95, 102, 594 P.2d 442 (1979). The court rejected the defendant's arguments, and upheld the constitutionality of the statute, holding that the term "immoral purposes" as used in the statute is limited by the statutory scheme to "communication for the purposes of sexual misconduct." *Id.* at 102.

"Sexual misconduct" defines the scope of immoral purposes. Thus, it did not need to be included in the charging document. Flores-Rodriguez's claim that the charging information was deficient fails.

E.     DOUBLE JEOPARDY

Flores-Rodriguez argues that double jeopardy bars his convictions for communicating with a minor for immoral purposes and sexual exploitation of a minor. Flores-Rodriguez did not raise the double jeopardy argument below, but the constitutional challenge may be raised for the first time on appeal. *State v. Adel*, 136 Wn.2d 629, 631-32, 965 P.2d 1072 (1998).

Both the federal and state double jeopardy clauses protect against multiple punishments for the same offense. U.S. CONST. amend. V; WASH. CONST. art. I, § 9; *State v. Hart*, 188 Wn. App. 453, 457, 353 P.3d 253 (2015). We review alleged violations of double jeopardy de novo. *State v. Villanueva-Gonzalez*, 180 Wn.2d 975, 979-80, 329 P.3d 78 (2014). Different double jeopardy

analyses apply depending on whether the convictions at issue were under the same statutory provision or different statutory provisions. *Id*. at 980-81. Where a defendant has convictions under different statutes, we apply the "same evidence" analysis. *See State v. Calle*, 125 Wn.2d 769, 777, 888 P.2d 155 (1995). The same evidence analysis asks whether the convictions were the same in law and in fact. *Id*.; *see accord Villanueva-Gonzalez*, 180 Wn.2d at 981. "[I]f each offense, as charged, includes elements not included in the other, the offenses are different and multiple convictions can stand." *Calle*, 125 Wn.2d at 777. If there is an element in each offense that is not included in the other, and proof of one offense would not necessarily also prove the other, the offenses are not constitutionally the same and the double jeopardy clause does not prevent convictions for both offenses. *Id*.

The two statutes at issue here are communicating with a minor for immoral purposes, RCW 9.68A.090, and sexual exploitation of a minor, RCW 9.68A.040. Communicating with a minor for immoral purposes provides:

> (1) Except as provided in subsection (2) of this section, a person who communicates with a minor for immoral purposes, or a person who communicates with someone the person believes to be a minor for immoral purposes, is guilty of a gross misdemeanor.

> (2) A person who communicates with a minor for immoral purposes is guilty of a class C felony punishable according to chapter 9A.20 RCW if the person has previously been convicted under this section or of a felony sexual offense under chapter 9.68A, 9A.44, or 9A.64 RCW or of any other felony sexual offense in this or any other state *or if the person communicates* with a minor or with someone the person believes to be a minor *for immoral purposes*, including the purchase or sale of commercial sex acts and sex trafficking, *through the sending of an electronic communication*.

RCW 9.68A.090 (emphasis added). And the to-convict instruction provided that, to find Flores-Rodriguez guilty of communicating with a minor for immoral purposes, the State had to prove that

24

he (1) communicated with L.C.; (2) "through the sending of an electronic communication"; (3) the communication was for immoral purposes of a sexual nature; and (4) L.C. was a minor. CP at 8; RCW 9.68A.090.

> Sexual exploitation of a minor provides:
>
> (1) A person is guilty of sexual exploitation of a minor if the person:
>
> (a) Compels a minor by threat or force to engage in sexually explicit conduct, knowing that such conduct will be photographed or part of a live performance;
>
> (b) Aids, invites, employs, authorizes, or causes a minor to engage in sexually explicit conduct, knowing that such conduct will be photographed or part of a live performance.

RCW 9.68A.040. The to-convict instruction provided that, to find Flores-Rodriguez guilty of sexual exploitation of a minor, the State had to prove that he (1) "aided, invited, authorized, or caused a minor to engage in sexually explicit conduct; and (2) "knew the conduct would be photographed or would be part of a live performance."[13] CP at 10-11; RCW 9.68A.040.

Flores-Rodriguez's convictions for communicating with a minor for immoral purposes and sexual exploitation of a minor are legally different. These offenses do not satisfy the "same evidence" test because each offense contains an element not contained in the other offense.[14] *State*

---

[13] Both offenses require that any of the acts occurred in Washington State. This element is not disputed.

[14] Flores-Rodriguez, citing *State v. Jackman*, 156 Wn.2d 736, 132 P.3d 136 (2006), states that the Washington State Supreme Court "has made clear that entering convictions for both [communicating with a minor for immoral purposes] and [sexual exploitation of a minor] *could* violate the prohibition against double jeopardy where the jury may have relied on the same underlying acts for both charges." Br. of Appellant at 44 (emphasis added). In *Jackman*, the court did not decide the question of whether the convictions violated double jeopardy. 156 Wn.d2d at 751. The Court of Appeals, however, held that convictions for both communicating with a minor for immoral purposes and sexual exploitation of a minor did not violate double jeopardy. *Jackman*,

*v. Jackman*, 125 Wn. App. 552, 562, 104 P.3d 686 (2004), *aff'd on other grounds*, 156 Wn.2d 736, 132 P.3d 136 (2006). Proof of communicating with a minor for immoral purposes does not necessarily prove sexual exploitation of a minor because a defendant could communicate electronically with a minor for immoral purposes without *inviting* that minor to *engage* in sexually explicit conduct that the defendant *knew would be photographed*. And the defendant could invite a minor to engage in sexually explicit conduct that would be photographed without communicating with a minor through electronic communication—for example, in person or by postal mail.

Also, Flores-Rodriguez's convictions for communicating with a minor for immoral purposes and sexual exploitation of a minor are factually different. Flores-Rodriguez communicated with a minor for immoral purposes through electronic communication by instructing L.C. to create a secret Facebook account and messaging her to arrange to have sex with her. And Flores-Rodriguez sexually exploited a minor when he invited and encouraged L.C. to send him photos of her engaging in sexually explicit conduct and to engage in sexually explicit conduct over video-calls.

Thus, Flores-Rodriguez's convictions for communicating with a minor for immoral purposes and sexual exploitation of a minor are legally and factually different. Therefore, Flores-Rodriguez's convictions do not violate double jeopardy.[15]

---

125 Wn. App. at 563. Notably, the Supreme Court did not affirm or reverse the Court of Appeals on this issue. *Jackman*, 156 Wn.2d at 751.

[15] Flores-Rodriguez also argues that some of his conduct could have satisfied requirements of either charge and without a separate-and-distinct-act jury instruction, the verdict is ambiguous as to whether the jury relied on the same underlying acts for both charges. Flores-Rodriguez did not propose a separate-and-distinct-act jury instruction, and did not object to the jury instructions given. In fact, Flores-Rodriguez stated: "I have reviewed [the proposed instructions]. I reviewed

F.       COMMENT ON THE EVIDENCE

Flores-Rodriguez argues that the trial court erred by instructing the jury that a "prolonged period of time" means more than a few weeks, and that its instruction constituted a comment on the evidence. Br. of Appellant at 47. The State concedes that the trial court erred in light of *State v. Brush*, 183 Wn.2d 550, 557, 353 P.3d 213 (2015). But the State argues that the comment on the evidence was not prejudicial, and we agree.

*Brush* held that jury instructions that define "prolonged period of time" as a period lasting more than a few weeks are an improper judicial comment on the evidence. *Id.* at 559. "Judicial comments are presumed to be prejudicial, and the burden is on the State to show that the defendant was not prejudiced, unless the record affirmatively shows that no prejudice could have resulted." *Id.* (quoting *State v. Levy*, 156 Wn.2d 709, 723, 132 P.3d 1076 (2006). The court held that because the abuse occurred during a two-month period prior to the murder, "defining a 'prolonged period of time' as 'more than a few weeks' likely affected the jury's finding on this issue." *Id.* "The abuse occurred over a time period just longer than a few weeks, and a straightforward application of the jury instruction would likely lead a jury to conclude that the abuse in this case met the given definition of a 'prolonged period of time.'" *Id.* And the Court held that the State did not meet its high burden of showing that no prejudice could have resulted. *Id.* at 559-60.

Despite the fact that the jury instruction constituted a comment on the evidence under *Brush*, it was not prejudicial because the evidence affirmatively showed that the ongoing pattern

---

them prior to trial. I believe they are appropriate. I have no objections to what the Court is proposing . . . and no exceptions or asking the Court to give any other instructions." VRP (Jan. 14, 2015) at 189. Therefore, he has waived any challenge to the jury instructions. *State v. Winings*, 126 Wn. App. 75, 89, 107 P.3d 141 (2005).

of abuse occurred over one year before the charged period. L.C. testified that her inappropriate relationship with Flores-Rodriguez started over a year before the charging period. And Flores-Rodriguez acknowledged that the prior incidents occurred 18 months or so before the charged period. Thus, a straightforward application of the jury instruction would have allowed the jury to determine that a period of over a year constituted a prolonged period of time. The record demonstrates that the trial court's comment on the evidence was not prejudicial.

## APPELLATE COSTS

Flores-Rodriguez filed a supplemental brief requesting that, if the State substantially prevails in this appeal, we decline to impose appellate costs on him because he claims he is indigent. The State did not respond. We exercise our discretion to decline to impose appellate costs.

Under RCW 10.73.160(1)[16], we have broad discretion in determining whether to grant or deny appellate costs to the prevailing party. *State v. Nolan*, 141 Wn.2d 620, 628, 8 P.3d 300 (2000); *State v. Sinclair*, 192 Wn. App. 380, 388, 367 P.3d 612, *review denied*, 185 Wn.2d 1034 (2016). Ability to pay is an important factor in the exercise of that discretion, although it is not the only relevant factor. *Id.* at 389.

The trial court found that Flores-Rodriguez was indigent. We presume a party remains indigent "throughout the review" unless the trial court finds otherwise. RAP 15.2(f). RCW 10.73.160(1) vests the appellate court with discretion to award appellate costs. Under RAP 14.2,

---

[16] The legislature amended this statute in 2015. LAWS OF 2015, c. 265 § 22. The amendment did not alter the statute relevant to this case; accordingly, we cite to the current version of the statute.

that discretion may be exercised in a decision terminating review. We exercise our discretion and hold that an award of appellate costs to the State is not appropriate.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, P.J.

We concur:

_____
Melnick, J.

_____
Sutton, J.